O’Neall, J.
The case of Blake v. Bolan and others, decided that, a decree in equity for the payment of money, “ constitutes a lien on land like a judgment at law.” It is now necessary, in following out the principles of that ^decision, to fix the time at which the lien commences, In considering this question, we can expect but little aid from adjudications of the English Court of Chancery ; the doctrine of the liens of decrees is peculiar to this State, and is practiced mainly upon the right given by the act of 1185 to the complainant to sue forth a writ in the nature of a fi. fa. to make the estate of the defendant, real and personal, liable in satisfaction thereof. It will, however, be of service in examining the question, to ascertain at what time the decrees of the English Court of Chancery take effect. According to strict practice in England, a decree has only the force of an interlocutory order, until signed and enrolled: 2 Fomb. on Equity, 198. According to rule, the decree could not be signed arid enrolled, until drawn up, and a copy served on the clerk of the adverse party. The decree so drawn up, if not objected to, is entered or recorded, and then put on the file, denoting the term at which it was pronounced. In the case of Clapham v. Philips, Finch, 169, the Lord Keeper declared, “ that the decrees of this Court ought to *124 take effect from the time the judgment of the Court was given and the decree pronounced in the cause ; and that the death of the parties ought not to hinder the enrolment thereof in some convenient time : for, otherwise, it might create, new trouble and expenses to the party living.” This decision, as between the parties to the suit, placed the effect of the decree, as commencing from the time judgment was pronounced in the cause; but, as against third persons, the decree could have had no effect, except from the enrolment. So, in 2 Fomb. on Eq. 200, it was said “a cause was finally heard, and the Court took time to consider of their judgment ; and in the meanwhile the party plaintiff died — the Court gave judgment nunc pro tunc, and ordered that their decree should have relation to, and be entered upon the day that the cause was finally heard, and in this decree the plaintiff had relief,” Jones v. LeDavid, Hill. T. 1791, in -. The effect of this was, as between the parties, to make the decree operate from the day on which it was heard; upon the principle ^at judgments at law, after verdict, are permitted* to be entered nunc pro tuno, notwithstanding the death of one of the parties. But it never was supposed that a judgment entered nunc pro tunc, could affect the rights of any but the parties to it, before it was actually signed. And so in the cases in Chancery referred to, the decrees take effect from the hearing, or the time the decree was actually pronounced, as may best promote the ends of justice, between the parties ; but against third person, until enrolled, a decree would be interlocutory, and could not operate to their prejudice.
In this State it is not the practice to enrol the decrees, and it has been held to be unnecessary, for the reason that the Chancellor delivers his decrees in writing, signed by himself, which is equivalent to an enrolment. The time when pronounced, as is said in Clapham v. Philips, would seem to be proper point of time from which they ought to take effect. The decree may, as between the parties themselves, or their immediate representatives, be ordered to be entered, as of the day on which the cause was heard. But this is as far as I am prepared to give retrospective effect to a decree.
The lien of a decree, as I have before said, arises from the fact, that by law, the party entitled to a writ of ft. fa., to make the real and personal estate of the person against whom the decree is, liable to its payment. If the right to take out execution is the cause of the lien, can it commence until the decree, which authorizes it to be issued, is pronounced ? As long as the judgment of the Court is locked up in the breast of the Chancellor, there can be no lien. There is no sum ascertained, which the party is to pay, and for which his estate may be made liable. It may, or may not be liable ; and until this uncertainty is ended, it would be vain to talk of the lien of a judgment existing. A recognizance, until es-treated, does not bind land. The State v. Anderson, decided at Columbia, December Term, 1831. It is a debt of record, but because the right to issue execution is not ascertained and fixed until the order for estreat is made, it has no lien. The principle of that decision applies to the question before üs. The right *to issue execution to satisfy the judgment, in both cases is what creates the lien.
According to the Statute of Frauds and Perjuries, 26 Car. 2, chap. 3; sect. 13, 14, 15, P. L., 83, the clerk who signs a judgment at law, is *125 required to note the day of the month and year, on which he signs it, both on his judgment docket, and also on the margin of the judgment; and as against purchasers bona fide for valuable consideration, they take date and have a lien, only from the day on which they are so signed. The settled practice and construction of these sections, in this State, has been to regard the lien of the judgment, not only as against purchasers, but as between creditors, as commencing from the day on which it was signed. Whether this construction is correct or incorrect, it is not now necessary to inquire. The provision in relation to purchasers, is sufficient for my present purpose. If the lien of a decree is to commence from the day on which a cause is heard, it may affect the rights of bona fide intermediate purchasers — for it sometimes happens, unavoidably, from the intrinsic difficulties involved in a cause, that a decree is postponed for months after the hearing. Is the estate of the defendant to be locked up during this time, and to be unalienable both by himself, and by operation of law ? For the effect of the constructive lien of the decree, would be to defeat any sale of his real estate, made after the hearing; and thus, either to prevent a sale, or to perpetrate a fraud on the purchaser. This was the very mischief intended to be guarded against, by the statute of frauds and perjuries, at law; and are we, in its teeth, in establishing'a rule confessedly within our power, in opposition, to the declared will of the people, through their representatives, to say, that a decree in equity shall have a constructive lien, which has been wisely denied to a judgment at law ? I think not. The objections to this constructive lien are not yet exhausted. Others present insuperable difficulties to its allowance. Its effect might be, to postpone a judgment at law obtained before it was pronounced, and to defeat a sale under it. If it be true, that it binds from the day on which the case is heard, a judgment* at law, obtained after the hearing, duly entered up, and signed by the clerk, and entitled to be paid perhaps for months, out of the debt or estate, suddenly becomes junior to that which had no existence until long after its own legal existence. This monstrous absurdity arises from allowing construction'to stand in place of fact. If under the judgment thus obtained, the land of the debtor is sold under the execution, and the money paid over to the plaintiff^ the constructive lien of the decree would defeat the sale and deprive the purchaser of his title. So, too, in the cases before us, if Dawson, under his decree, had sold his. debtor’s estate, and received the proceeds before the decree in Thos. C. Scriven’s case, he must, if the doctrine contended for is correct, upon the decree being pronounced in the latter case, have refunded to it its proportion. These consequences of a constructive lien, must satisfy every one of the impropriety of allowing it. But it is said, it is conceded that the decree could not have a constructive lien, as against purchasers, it is only between creditors that it ought to have this effect. There can be no such distinction made. The decree must, for all purposes, take effect from the day on which the cause was heard; or from the day on which it is pronounced. From the time it is legally to be regarded as a decree, it has its lien, and there is nothing in the law which will enable us to postpone it as to one class, and give it effect as to another.
In equity, there is not as at law, a technical term within which the Judge is alone authorized to pronounce judgment. The term in Equity *126 is for the hearing of causes, and the Court is considered as always open. Hence it is, that the Chancellor may in vacation, as well as during 1ns sittings, pronounce his decrees. He is regarded as in Court, to pronounce judgment, on the day on which his decree is delivered to the Commissioner, and filed by him; and from that time it is a decree, and its lien commences. This rule may operate hardly in this and similar cases, but these partial evils will not bear a comparison with those which would result from giving decrees a lien from the day on which the causes were heard. The prevention of such consequences as ^result from the application of the rule, to the cases under consideration, will in future be in the power of the Chancellors. Cases against the same party at the same Court, in which decrees for the payment of money are expected to be made, can very properly be held under advisement together, until judgment at the same time, can be pronounced on them. It is ordered and decreed, that the Circuit decree be affirmed.
Johnson and Earle, Js., concurred.